UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DIANA J. DECKARD,<br><br>                Plaintiff,<br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br> of the Social Security Administration,<br><br>                Defendant. | 4:10-cv-067-SEB-WGH |

**Entry Discussing Complaint for Judicial Review**

Diana J. Deckard ("Deckard") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. Background**

Deckard filed applications for SSI and DIB on September 7, 2004, and October 6, 2004, respectively, alleging an onset date of disability of May 1, 2004. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on March 3, 2008. Deckard appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Deckard, a medical expert, and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on July 16, 2008. On May 11, 2010, the Appeals Council denied Deckard's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Deckard met the insured status requirements of the Act through December 31, 2009; (2) Deckard had not engaged in substantial gainful activity since May 1, 2004, the alleged onset date; (3) Deckard had the following severe impairments: degenerative disc and joint disease of the cervical spine; status post 1996 cervical disc surgery; degenerative joint disease of the lumbar spine; bilateral carpal tunnel syndrome; deformities of the feet, including pes planus and hallux valgus deformities of both feet and mild spurring in the dorsum of the right mid-foot; osteoarthritis of both knees; fibromyalgia; and depression;[1] (4) Deckard did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Deckard had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except that she could not bend, squat, or stoop more than occasionally, she could not kneel or crawl, she must avoid work at unprotected heights and around dangerous moving machinery, and she should not have exposure to concentrated vibrations; (6) Deckard was unable to perform any past relevant work; (7) Deckard was born on May 18, 1963 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date of May 1, 2004; (8) Deckard had at least a high school education, she was able to communicate in English, and she had acquired work skills from past relevant work; and (9) considering Deckard's age, education, work experience, and RFC, Deckard had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Deckard had not been under a "disability," as defined in the Act, from May 1, 2004, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

---

[1] Although listed as a severe impairment in the ALJ's list of severe impairments, in the body of the ALJ's decision, he concluded that Deckard's depression was not severe. (R. at 19).

2

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.    Analysis

In this case, the ALJ determined that Deckard had severe impairments consisting of degenerative disc and joint disease of the cervical spine, degenerative joint disease of the lumbar spine, bilateral carpal tunnel syndrome, deformities of the feet, osteoarthritis of both knees, and fibromyalgia, but that she could perform some sedentary work with certain restrictions. (R. at 21-22).[2] Deckard argues that the ALJ's decision is not supported by substantial evidence.

Deckard first argues that the ALJ violated her due process rights by failing to schedule a supplemental hearing to allow cross-examination of a consulting psychologist Dr. Kimberly Green. This argument relates also to Deckard's claims that the ALJ erred in finding that Deckard's depression was not a severe impairment and in not assigning greater limitations based on her symptoms of depression.[3]

---

[2] The court notes that the numbering of the pages of the record is inaccurate in some places. For instance, page 28 of the ALJ's decision is followed by a second page 20, a second page 21, and then a second page 22. The court will simply refer to the page numbers recorded on each page even though there may be more than one page having that number.

[3] The Commissioner initially argued that Deckard failed to request a supplemental hearing. The court directed that the record be supplemented with a copy of the letter submitted by Deckard's counsel requesting a supplemental hearing to afford him the opportunity to cross-examine Dr. Green. (docket 20). The parties have now supplemented their arguments as to the due process claim.

With his letter of June 12, 2008, the ALJ provided Deckard with a copy of a consultative psychological examination report by Dr. Kimberly Green. (R. at 138). The ALJ informed Deckard that she could request an opportunity to question Dr. Green. *Id.* The ALJ stated, "I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues." *Id.* The Commissioner concedes that a claimant should be given the opportunity to cross-examine a witness such as Dr. Green if the cross-examination is required for the full and true disclosure of the facts. *See* 5 U.S.C. § 556(d) ("A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."). The Commissioner contends that in this case, cross-examination of Dr. Green was not required because the ALJ considered Deckard's objections that the opinion of treating physician Dr. Lambrecht should have been given greater weight than that of Dr. Green. The Commissioner asserts that a supplemental hearing was not necessary to establish the extent of the treatment relationships between Deckard and Dr. Lambrecht and Dr. Green, respectively. "The ALJ has discretion to decide when cross-examination is warranted." *Butera v. Apfel*, 173 F.3d 1049, 1059 (7th Cir. 1999) (internal quotation omitted).

In a June 26, 2008, response to the ALJ, Deckard's counsel objected first on the basis that the foundation of Dr. Green's report was not specific in describing what medical records were reviewed. (R. at 451). Deckard asserts that Dr. Green did not disclose whether she reviewed the records of treating physician Dr. Lambrecht prior to rendering her opinion as to the severity of Deckard's depression. *Id.* Deckard also pointed out that Dr. Green's opinions were not based on any objective psychological testing and was instead based only on a mental status examination. (R. at 452). Deckard requested that the supplemental hearing be scheduled so that counsel could inquire into the basis for Dr. Green's findings and to explore why her assessment was "so much at odds with the assessment of the long-standing treating physician." *Id.*

The ALJ acknowledged Deckard's objection to Dr. Green's report and her request for a supplemental hearing, but concluded that it was not necessary to hold a supplemental hearing for cross-examination of Dr. Green. (R. at 16). The ALJ stated that he had "given the appropriate weight to Dr. Green's evaluation and to the records of Dr. Lambrecht, the claimant's treating physician." *Id.*

Dr. Lambrecht, an internal medicine specialist who had treated Deckard for a number of years, opined that Deckard's "depression, by itself, is of such severity that it would leave Diana with very little useful functional ability." (R. at 28, 359). Dr. Lambrecht explained in a letter dated September 6, 2007, that Deckard's physical and mental problems of fibromyalgia, cervical pain, obesity, and depression, exacerbated each other from a functional standpoint. (R. at 359). Dr. Lambrecht discussed Deckard's difficulties in sustaining attention to tasks, working at a consistent pace, concentrating for extended periods, and working in proximity to others without distracting them with symptoms of pain and depression. *Id.*

4

The ALJ explained that he gave less weight to the opinion of Dr. Lambrecht because she was not a mental health professional and because her treatment was focused primarily on Deckard's physical symptoms. (R. at 28). As noted, the Commissioner argues that this explanation negated any need to allow Deckard the opportunity to cross-examine Dr. Green. The fact that the ALJ considered the respective specialities of the various physicians in determining the weight to give to each of their opinions, however, does not squarely address the issue at hand.

The threshold question is whether Deckard should have been permitted to cross-examine Dr. Green. Deckard does not argue that Dr. Lambrecht's tenure with Deckard alone requires her opinions to be given greater weight. Deckard has argued since the receipt of the ALJ's cover letter that certain facts were lacking from Dr. Green's report. In light of the differences between the physicians' views of Deckard's mental health symptoms, Deckard questions the basis for and foundation of Dr. Green's opinion. Deckard requested the opportunity to explore such issues through cross-examination. Those issues are not addressed by the ALJ, nor could they be addressed on the present record. Deckard's objections and reasons for her request for cross-examination of the witness went beyond the fact that Dr. Lambrecht was a long-term treating physician and Dr. Green saw Deckard once. The ALJ's consideration of the known treatment history of each physician did not bring to light the "full and true disclosure of the facts" sought by Deckard. Deckard's due process claim is well taken. The ALJ abused his discretion in denying Deckard's request. On remand, the ALJ shall permit Deckard to cross-examine the consulting psychologist Dr. Kimberly Green.

The balance of Deckard's claims of error in this case rest predominantly on her contention that her mental impairment and symptoms of depression were not adequately considered by the ALJ. Deckard argues that the ALJ ignored her psychological symptoms in determining her RFC and that the hypothetical question posed to the vocational expert failed to include limitations caused by psychological problems. In addition, Deckard argues that the ALJ should have discussed and explained the weight given to the statements provided by Deckard's husband and how such statements related to Deckard's credibility. Because on remand the ALJ will be reconsidering the evidence as to Deckard's mental impairments and because his assessment of Deckard's symptoms caused by depression may change, the court need not address the merits of each of these remaining claims. On remand, however, the ALJ shall also discuss the statements made by Deckard's husband and explain whether and to what extent he considered such statements in determining Deckard's ability to function on a daily basis.

## III. Conclusion

For the reasons set forth above, the ALJ's conclusion that Deckard was not disabled is not supported by substantial evidence. The court, therefore, is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/22/2011

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana